LITTKY & MALLON v MICHIGAN NATIONAL BANK OF
DETROIT

Docket No. 78-1878. Submitted October 5, 1979, at Detroit.—Decided
November 21, 1979. Leave to appeal denied, 408 Mich 932.

Plaintiff, Littky & Mallon, a professional corporation, and defen-
dant, Michigan National Bank of Detroit, had offices in the
same building. Plaintiff maintained its checking account at
another bank. Defendant, as a courtesy, regularly cashed for
plaintiff's clients checks received from plaintiff. Defendant
notified plaintiff that it would discontinue the courtesy unless
plaintiff made a deposit with defendant. Plaintiff then pur-
chased a $10,000 certificate of deposit from defendant. A person
identifying herself as Mary Ann McKay presented a check to
defendant for $23,000 drawn on plaintiff's account. The check,
which defendant paid, was subsequently dishonored for an
irregular drawer's signature. Defendant sought to offset its loss
by refusing to pay on the $10,000 certificate. Plaintiff sued
defendant in the Wayne Circuit Court to recover its certificate
and defendant counterclaimed for $23,000. The parties stipu-
lated at trial that Louis Williams, Marvin Littky and Jenny
LaJoie were authorized to sign on plaintiff's account and that
Louis Williams caused a third person to affix the signature of
Jenny LaJoie to the dishonored check. Marvin Littky, sole
shareholder and president of plaintiff, testified that Williams
had no authority to authorize anyone to sign checks on behalf
of the firm. Judgment was entered, Roland L. Olzark, J., on a
jury verdict for plaintiff. Defendant appeals. *Held:*

1. A court must use common sense and commercial experi-
ence in determining whether a mark on a check constitutes a
signature. Defendant argued that the printed firm name at the

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am Jur 2d, Bills and Notes § 210.
[2] 5 Am Jur 2d, Agency § 150.
    11 Am Jur 2d, Bills and Notes § 211.
[3] 5 Am Jur 2d, Agency § 150.
    11 Am Jur 2d, Bills and Notes § 211.
[4] 10 Am Jur 2d, Banks §§ 603, 604.
    11 Am Jur 2d, Bills and Notes §§ 129, 710-712.

top of the check constituted a sufficient signature. An imprinted name of a depositor on a check is not a signature where there is a written signature at an appropriate place on the check.

2. The power to sign a check for another and bind him therefor may rest upon express, implied or apparent authority. A person who has authority to sign checks on an account does not have authority to authorize another to sign the name of a third person who also has authority to sign on the account simply by having the authority to authorize another to sign for him. Williams did not have authority to authorize anyone to sign Miss LaJoie's name to the check.

3. The fictitious payee provision in the Uniform Commercial Code does not estop the owner of an account on which a check was drawn from denying the validity of a forged drawer's signature.

Affirmed.

1. SIGNATURES — NEGOTIABLE INSTRUMENTS.

Courts must use common sense and commercial experience in determining whether a mark on a check constitutes a signature; an imprinted name of a depositor on a check is not a signature where there is a written signature at an appropriate place on the check.

2. PRINCIPAL AND AGENT — SIGNATURES — NEGOTIABLE INSTRUMENTS — AGENT'S POWER TO BIND PRINCIPAL.

The power to sign a check for another and bind him therefor may rest upon express, implied or apparent authority.

3. PRINCIPAL AND AGENT — SIGNATURES — NEGOTIABLE INSTRUMENTS.

A person who has authority to sign checks on an account does not have authority to authorize another to sign the name of a third person who also has authority to sign on the account simply by having the authority to authorize another to sign for him.

4. SIGNATURES — NEGOTIABLE INSTRUMENTS — STATUTES — UNIFORM COMMERCIAL CODE.

A fictitious payee provision in the Uniform Commercial Code does not estop the owner of an account on which a check was drawn from denying the validity of a forged drawer's signature (MCL 440.3405; MSA 19.3405).

*Lippitt, Harrison, Perlove, Friedman & Zack* (by

*Warren J. Perlove* and *Steven B. Sinkoff),* for plaintiff.

*Burgoyne, Kaufman, Roche & Ward, P.C.,* for defendant.

Before: T. M. BURNS, P.J., and BRONSON and R. M. MAHER, JJ.

PER CURIAM. This is an appeal from a jury verdict in favor of the plaintiff for $10,000 and denying the defendant's counterclaim for $23,000.

At all times pertinent to this case, the plaintiff maintained its offices in the building where defendant's main office was located. The plaintiff maintained its accounts at another bank, Manufacturer's National Bank of Detroit. However, many of plaintiff's clients regularly cashed checks received from plaintiff at defendant bank. At first, this service was done as a courtesy to plaintiff, but subsequently, defendant bank requested the plaintiff make a deposit with it or the courtesy would be withdrawn. Accordingly, plaintiff purchased a $10,000 certificate of deposit from defendant.

On or about September 25, 1972, a person identifying herself as Mary Ann McKay presented a check for $23,000 drawn on plaintiff's corporate account at Manufacturer's National Bank at defendant bank. Defendant paid this check which was subsequently dishonored at Manufacturer's Bank due to an irregular signature. Defendant sought to offset its losses on this check by refusing to pay plaintiff on the $10,000 certificate. Plaintiff instituted suit to recover on the certificate and defendant counterclaimed for the $23,000 due on the check.

Both parties stipulated that Louis Williams was one of the authorized signers on plaintiff's account,

the other signers being Marvin Littky and Jenny LaJoie. It was further stipulated that Louis Williams testified in other proceedings that he caused a third party to affix the signature of Jenny LaJoie to the check in question.

The trial transcript contains only the testimony of two witnesses, Marvin Littky, the sole shareholder and president of plaintiff corporation, and Jenny LaJoie, his secretary. Littky testified that Williams had no authority to authorize anyone to sign checks on the firm's behalf.

On October 3, 1977, a Wayne County jury returned a verdict in favor of the plaintiff and denying defendant's counterclaim. Defendant now appeals by right.

The defendant raises three issues on appeal. First, the defendant argues that the plaintiff's name, imprinted at the top of the check in question, is a sufficient signature to bind the plaintiff. We note that the definition of the term signature in MCL 440.3401(2); MSA 19.3401(2) is broadly construed. However, we also note that pursuant to comment 39 following MCL 440.1201; MSA 19.1201, courts must use common sense and commercial experience in determining whether a mark constitutes a signature. We find that, based on both common sense and commercial experience, such a conclusion would be unreasonable where there was a written signature at the appropriate place on the check. See *Pollin v Mindy Manufacturing Co,* 211 Pa Super 87; 236 A2d 542 (1967).

The defendant next argues that the third party who actually signed the check in question had the authority to bind the plaintiff. The power to sign for another and thereby bind that party pursuant to MCL 440.3403(1); MSA 19.3403(1) may rest upon express, implied or apparent authority. White &

Summers, *Uniform Commercial Code,* § 13-3, p 400. However, after thoroughly reviewing the testimony at trial and the stipulations of the parties, we find no evidence that such authority existed. While Mr. Williams may have had the authority to authorize a third person to sign his (Williams's) name to the check, he did not have the authority to authorize such a third person to sign the name of another. Accordingly, this argument is without merit.

The defendant next argues that the plaintiff is estopped from denying that the signature on the check in question is valid pursuant to MCL 440.3405; MSA 19.3405. However, that section of the Code deals with "padded payroll" cases where payees' signatures are forged. Since those cases involve a valid signature, the drafters of the Code decided that it would be commercially unsound to require the bank to spot such irregularities, and imposed the risk of loss on the employer. In this case, however, we are dealing with the forged signature of a drawer, not a payee. The bank should have been able to detect the irregular signature. Accordingly, MCL 400.3405; MSA 19.3405, is inapplicable.

Affirmed.